Parks *v.* Loomis & another.

## SYLVESTER PARKS *vs.* JUSTIN E. LOOMIS & another.

A false demonstration, though a reference to a natural monument, may be rejected in construing a deed.

Land conveyed was described in the deed, after an accurate statement of its northern and western boundaries, as bounded " southerly partly on land of B. and partly on the Great Brook, and from the brook to the turnpike road on land set off H. A. and bounded northerly on the turnpike road; being all that part of the farm of R. A. deceased, which was set off to A. A. as his share of the said farm; for a particular description reference may be had to the return of the distribution of the estate of R. A. in the probate office." The land of B. extended along the westerly half of the southern boundary of the land conveyed, and was itself bounded on the south by the Great Brook, which extended from the southeast corner of B.'s land eastwardly to the turnpike, and the turnpike ran northwestwardly from the Great Brook to the northeast corner of the land conveyed. The report of the partition of the estate of R. A. was lost; but the jury found that the line established thereby between A. A. and H. A. was a continuation of the northern line of B.'s land eastwardly to the turnpike; the land set off to A. A. lying north of that line, and between the northerly and westerly boundaries of this deed and the turnpike; and that set off to H. A. lying south of that line, and upon both sides of the brook. The brook was many rods south of that line. *Held*, that the Great Brook must be rejected as a monument, as inconsistent with the residue of the description; and that the southern boundary of the land conveyed was the northern line of B.'s land and the division line as found by the jury.

In an action for converting wood, the plaintiff may dispute the title of those under whom the defendant claims. to the land from which the wood was cut.

ACTION OF TORT for the conversion by the defendants of a quantity of wood, sold to them by Marcus Bradley, who cut it upon land in Russell, the title to which was in dispute between him and the plaintiff.

At the trial in the court of common pleas at March term 1854, before *Mellen*, J., the parties admitted that said land was part of a farm once owned by Ralph Andrus, who died in 1822, leaving a widow, Lydia Andrus, two sons, Abel P. and Henry, and two daughters; that the widow had part of this farm set out to her for her dower, and resided thereon until her death in 1852; that about 1826 the residue of the real estate of Ralph was divided by commissioners among his heirs, the remainder of the farm being divided between the two sons, and other lands set off to the daughters; but this division was not recorded in the probate office nor the registry of deeds, and could not be found.

So much of the farm of Ralph Andrus as lay west of the turnpike road is shown on the following plan:

The wood in controversy was cut on the part set off to Henry Andrus, south of the division line found by the jury, and north of the Great Brook.

The plaintiff, to prove his title to the land and the wood, gave in evidence a deed from Abel P. Andrus to Lydia Andrus, dated July 18th 1826, of all his interest in his father's real estate; a deed from all the other heirs of Ralph Andrus to Henry Andrus, dated January 15th 1827, and a deed from Henry to Lydia, dated January 23d 1830, each of which two deeds included, besides land on the east side of the turnpike, the land bounded by the turnpike on the east, and beginning on the west side of said turnpike at " the southeast corner of land set out to Abel P. Andrus, thence west seven degrees north on said Abel P.'s land fifty rods to a stake and stones, thence south seventeen degrees west eighty six rods to a stake and stones on the highway, thence eastwardly on said highway to the turnpike; " and a deed from Lydia to the plaintiff, dated April 4th 1851, of land described as bounded thus : " Beginning at a stake and stones on the west line of the old turnpike road, at the southeast corner of land set off to Abel P. Andrus, belonging to the estate of Ralph Andrus, deceased, and running west and north on said Abel P.'s land fifty rods to a stake and stones, (a corner of Lyman Bradley,) thence south eighteen degrees west on said Lyman's land twenty three rods to the Great Brook, so called, thence easterly on the north side of said brook to the west line of said old turnpike, thence north thirty one degrees west on the west line of said old turnpike thirty nine rods to the first mentioned bound ; containing by estimation seven acres of land, be the same more or less."

The defendants, to prove Bradley's title to the land in question, gave in evidence a deed from Lydia Andrus to Henry Andrus, a son of said Abel, dated February 22d 1840, of land " bounded northerly on Pine Hill Road, so called, and land of Charles Tinker, westerly on land of Charles Tinker, southerly partly on land of Lyman Bradley and partly on the Great Brook, and from the brook to the turnpike road on land. set off Henry Andrus, and bounded northerly on the turnpike road; being all that part of the farm of Ralph Andrus, deceased, which was set

off to Abel P. Andrus as his share of the said farm; containing fourteen acres of land more or less; for a particular description reference may be had to the returns of distribution of the estate of Ralph Andrus in the probate office in Springfield;" and a deed dated May 11th 1846, from said Henry Andrus to Bradley, containing a substantially similar description.

The jury, under instructions which were not excepted to, found that there was a conversion of the wood by the defendants, and assessed the value thereof; and also found specially that the land set off to Henry Andrus in the division between the heirs of Ralph did " extend north to a monument near the south bar post on the turnpike, about thirty rods southerly of Charles Tinker's north boundary;" as shown on the plan.

The plaintiff contended that the descriptions in the deeds relied on by the defendants were erroneous, and that the reference to the Great Brook was inadvertently inserted by the scrivener who wrote the first of those deeds, and was inconsistent with the other bounds and lines described in said deeds; and introduced evidence tending to show that the parties thereto, by their acts and declarations, intended and understood that those deeds did not extend to the brook, nor further south than the southerly line of the share originally set off to Abel P. Andrus as indicated on the plan; and that Lydia continued to occupy and assert her title to the premises described in the deed to the plaintiff, till the date of said deed, up to the northerly line thereof. The Great Brook in no place touches the land included in the deeds relied on by the defendants, unless it be between Bradley's east line and the turnpike.

The defendants contended " that the title to real estate could not be tried in an action of trover between the claimant of the land and a stranger who had purchased wood which had been taken from the land."

The judge ruled that the deeds relied on by the defendants conveyed the land to the Great Brook, including the place where the wood was cut, and therefore the action could not be maintained; and directed a verdict for the defendants, which was returned; and the plaintiff alleged exceptions.

The parties agreed that if this ruling was erroneous, and the deed of Lydia Andrus to Henry Andrus only conveyed the premises set off to Abel P. Andrus as his share, and the action could be maintained on the facts above stated, the verdict should be set aside, and judgment entered for the plaintiff for the amount found by the jury, with interest from the date of the writ.

This case was argued and decided at Boston in January 1855.

*H. Vose,* for the plaintiff.

*W. G. Bates,* for the defendants.

THOMAS, J. The case turns upon the construction to be given to the deed of Lydia Andrus to Henry Andrus, under whom Bradley, the defendants' vendor, claims. This deed being prior in point of time to that to Parks, the plaintiff, is to be first satisfied. All the deeds are inartificial, illiterate, and difficult of construction. This difficulty is increased by the loss of the report of the commissioners who made partition of the lands of Ralph Andrus between his heirs. The jury however have found where the division line of the portion of the farm in Russell set off to Abel P. and Henry, the sons of Ralph, was. Both these portions came by deeds to Lydia. The question therefore is, What did the deed of Lydia to Henry Andrus convey?

To ascertain this we must look at the whole description. The land is described as " bounded northerly on Pine Hill Road, so called, and land of Charles Tinker, westerly on land of Charles Tinker, southerly partly on land of Lyman Bradley and partly on the Great Brook, and from the brook to the turnpike road on land set off Henry Andrus, and bounded northerly [easterly ?] on the turnpike road."

Looking at the plan, it will be found impracticable to locate the deed; that the description is an impossible one; that its lines cannot be made to meet. Overlooking the defect of not giving part of the west line as on Bradley's land, and that the brook is twenty seven rods south of the north line of Bradley's land, you cannot run from the brook to the turnpike " on land set off to Henry Andrus." The Great Brook is at no point within twenty seven rods of that line as ascertained by the jury; nor, failing to pass from the brook to the turnpike on the line of

"land set off Henry Andrus," is there any line given, by which you can pass; and therefore this southerly line, and consequently the quantity of land conveyed, is left wholly uncertain. The two parts of the southerly line cannot both be correct. That is impossible. The Great Brook is indeed a bound. So also is the land set off to Henry Andrus, a line twenty seven rods north of the brook. You must reject one of the two. By rejecting the brook, the description is plain; by rejecting the line of the land set off Henry Andrus, the tract conveyed is left wholly uncertain, and the deed would be void. The brook itself is within the land of Henry Andrus, as the dividing line is found by the jury, and you have neither the *terminus a quo*, the point at which it leaves the brook, nor the *terminus ad quem*, on the turnpike.

We must resort to the other part of the description for relief, and that describes the land conveyed as "being all that part of the farm of Ralph Andrus, deceased, which was set off to Abel P. Andrus as his share of the said farm." The southerly line of that division was the line running westerly from the monument near the south bar post on the turnpike to Lyman Bradley's northeast corner. This line is a continuation of Lyman Bradley's northerly line, and makes with it a straight line.

It thus becomes plain that the reference to the brook is a false demonstration, which being rejected, all parts of the description are reconciled, and the deed in question from Lydia to Henry Andrus is made consistent with the prior deed of the elder Henry to Lydia, and the subsequent deed of Lydia to the plaintiff. This construction is also the practical one put upon the instrument by the parties.

The rule, that monuments, natural or artificial, control in boundaries, is not inflexible. *Davis* v. *Rainsford*, 17 Mass. 207. A boundary, inadvertently inserted, may be rejected. *Thatcher* v. *Howland*, 2 Met. 241. *Bosworth* v. *Sturtevant*, 2 Cush. 392.

The other question has presented less difficulty. The jury found a conversion, under proper instructions from the court. The subject of the suit of trover was a personal chattel, and the trial of the title to the land is only collateral and incidental.

*Verdict set aside : judgment for the plaintiff.*